LOUIS GREENBERG, INC., Appellant-Respondent, *v.* PIONEER SYNDICATE, INC., et al., Respondents-Appellants, et al., Defendants.

First Department, May 25, 1954.

*Lawrence H. Levinson* for appellant-respondent.

*Morris Wagman* of counsel (*Goodman & Mabel,* attorneys), for respondents-appellants.

CALLAHAN, J. Cross appeals have been taken by plaintiff, a materialman, and by defendant, the owner of certain real property situated on West 14th Street, New York City, from a judgment awarding plaintiff a mechanic's lien and granting a money judgment against the owner and against the company which bonded the lien.

The record on appeal is abbreviated, consisting solely of the pleadings and the findings and conclusions of the trial court as revealed in its opinion. On this record we are called upon to decide merely whether the findings of fact warrant the legal conclusions drawn.

The case involves material furnished by plaintiff to a plumbing contractor, Washington Avenue Heating & Plumbing Co. (" Washington "), and we are required to determine whether there was any amount due to the contractor which was available to plaintiff's lien.

Two questions are discussed in the trial court's opinion: (1) whether there was any fund to which the lien could attach on the day it was filed; and (2) whether subsequent to filing and upon completion of the building a fund was created to which the lien attached.

The owner, Pioneer Syndicate, Inc. (" Pioneer ") contracted directly with Washington for the plumbing work for an agreed price of $30,250. Plaintiff claimed that it had not been paid for $12,000 worth of materials furnished to Washington and filed a mechanic's lien on October 20, 1952. Four days later Pioneer declared Washington's contract breached for financial inability to complete.

We do not have the contract or the testimony before us. Nor do we have the letter of Pioneer to Washington declaring the breach. We are bound by the trial court's findings. We think that its statement that Pioneer " took over completion ", read in its context, means that it took over completion of Washington's contract.

The trial court then went on to find that 80% of the work had been completed when the lien was filed. It computed 80% of the contract price of $30,250, less 15% for retained percentages provided for by the contract, to make $20,570 as the amount earned by Washington up to termination of its contract. It was further found that $21,679.81 had been paid to Washington up to that time. It follows from these findings that there was nothing due to Washington on October 20, 1952, to which plaintiff's lien could then attach.

The parties discuss at some length whether the trial court was correct in excluding the 15% of retained percentages from plaintiff's lien. We agree with the trial court that the 15% was not subject to this lien on October 20, 1952. (*Kelly* v. *Bloomingdale,* 139 N. Y. 343, 346; Blanc on Mechanics' Liens, pp. 185, 186.)

This leaves the question as to whether any fund developed as a result of completion to which the lien could attach. As we have concluded that Pioneer took over completion of Washington's contract rather than forfeiting it, the liens of materialmen who supplied Washington would attach to any surplus resulting from an excess of the amount unpaid under the contract over the cost of completion (*Van Clief* v. *Van Vechten,* 130 N. Y. 571; *Campbell* v. *Coon,* 149 N. Y. 556; *Fraenkel* v. *Friedmann,* 199 N. Y. 351).

The findings show that Pioneer arranged with Philip Farbman Corp. to complete Washington's contract. Farbman claimed that the cost of completion was $8,422.83, exclusive of 10% overhead and 12½% profit. Of the amount so claimed the trial court disallowed $3,996.25, holding that the proof was insufficient to show that the materials represented by that sum had gone into the work of completion. But instead of deducting $3,996.25 from $8,422.83, the trial court added it to $20,570 and computed the amount of $24,566.25 to be the sum subject to the lien and the unpaid balance at $2,886.44.

This last computation seems incorrect. The sum of $20,570 represented 80% of the contract price (less the retained percentages). This figure had no bearing on the amount that would be due after total completion. That amount would be the total contract price less the sums paid on account to Washington. This figure would be $8,570.19, and the existence of a fund available to the lien would depend on whether the cost of completion was more or less than the last sum.

The cost of completion as testified by Farbman ($8,422.83) appears to be the sum accepted by the trial court, less the $3,996.25 disallowed, making the net $4,426.58. But 10% overhead and 12½% profit must be added, since Farbman testified that his figure as to cost of completion was exclusive thereof. When these percentages are added, $5,422.56 appears to be the actual cost of completion. Deducting this figure from $8,570.19, we obtain $3,147.63 as the balance available for lienors after completion.

It appears that two other liens of $337.71 and $121.23 were approved by the court.* It was found that $12,000 was due to

---

* Decision on motion for reargument. June 21, 1954. Defendant's motion for reargument granted to the extent of deleting from the final paragraph of the opinion of this court the word and figures " $337.71 and $121.23 " and substituting therefor the word and figures, " $1,852.53 and $607.84", and in all other respects the motion is denied. Settle order on notice.

Present — Peck, P. J., Dore, Callahan, Breitel and Bergan, JJ. [Also printed, 283 App. Div. 1053.] — [Rep.

plaintiff. The three lienors were entitled to share pro rata in the fund of $3,147.63. The parties may compute the amount due to plaintiff based upon these figures and submit new conclusions in accordance herewith.

PECK, P. J., DORE, BREITEL and BERGAN, JJ., concur.

Judgment unanimously modified in accordance with the opinion herein and, as so modified, affirmed.